Chief Justice Robertson
delivered the opinion of the Court.
Meredith W. Fisher being the holder of two land-office certificates, for two quarter sections of land, in Gallatin county,. Illinois, on which $420, of the price remained due, and were payable in instalments, to the United States, exchanged hik. right to these lands, with Moses Kennedy, for two hundred acres of land, belonging to Kennedy, in Union county, Kentucky».
Kennedy gave his bond to Fisher, for a conveyance to him, of the legal title to the 200 acres of land, in Union, whenever Fisher should procure the legal-title to be vested i-n Kennedy,.to the lands in Gállatin»-
Sometime after this- contract, Fisher- died, having made and published a will, in which, after devising the two hundred acres-of land, as a-residuary legacy to his wife and daughter, he directed (his)“executors to sell” (his) land, “for payment of. his debts,” if his personal estate should be insufficient for that purpose, and to convey the title thereof, to the purchaser..
Several persons were nominated executors by the will, but only one of them, Daniel M‘Kinney, was-quaiified as executor.
As executor, M‘Kinney advertised the sale of the two hundred acres of land in Union, to the highest bidder,' and did accordingly sell. On the day of sale those who attended were notified of the nature of the-title, and informed, that the purchaser would be required fo pay the balance due to the United States, on the certificates, for the two quarter sections of land in Illinois, which was represented to be only $360 j and would have to procure the title to the two quarter sections, to Kennedy, before a conveyance could be executed from him, for the two hundred acres, in Union. The certificates an^ Kennedy’s bond for a title, were also exhibited.
*247 Colemac, the appellant, being the highest bidder, became the purchaser, and executed his note, payable in' one year, for $>706, the price bid by him. M‘-Jiinney assigned to him, Kennedy’s bond, for a title, and delivered to him the land office certificates. Af-terwards, he was put into the possession of the two hundred acres of land.
The sale was made in 1823.
Coleman having failed to pay off his note, when it became due, M’Kinney obtained a judgment on it for the nominal amount in specie, to injoin which, and to obtain general relief, the bill in chancery, in this case, was filed by Coleman, in 1825.
In his bill, he alleged, that he had been advised that MsKinney had no power to sell the land; that he had not properly assigned to him the certificates; that §480 instead of §360, were due on the two quarter sections; that by the contract of purchase, the price which he bid for the land, was to be paid in commonwealth’s notes, at their nominal value; that M‘Kinney was endeavoring to enforce his judgment for the whole amount in specie, and had refused to credit his execution with the value in commonwealth’s paper, of the difference between §360 and §480, but insisted on allowing a credit for only $>120,- the nominal difference in the two sums; that commonwealth’s paper was worth only half as much as specie when his note was due. And, therefore, he prayed for an injunction, anda reeision of the contract, unless M‘Kinney would consent, or could be compelled to receive the value of commonwealth’s paper, at the time his note was payable, in discharge of his judgment, and would agree or could be compelled to credit his judgment, with double the amount of the difference between §360 and §480; and would procure a title to the two hundred acres of land, from Kennedy.
M‘Kinney averred, in his answer, that he had legal power to sell the land; that Coleman, when he bought it, was fully acquainted with the nature of Fisher’s title, and with all the circumstances connected with it; that he had gone with him to the land office, in Gallatin, Illinois, and there offered to transfer to *248 him, on the register’s books, the right of Fisher, to the two quarter sections of land; but, that Coleman refused to accept the transfers, alleging, that the contract,if enforced, would ruin him; that .afterwards, he assigned to Coleman, the certificates, some authentication of which assignments, he exhibits; that it was stated at the sale, and distinctly understood, that the purchaser would be required to give his note for the price, in dollars; that he does not recollect, that he stated, whilst the auctioneer was selling the land, as alleged in the bill, that the reason why the note would be required for dollars, was, that otherwise, the pur-thaser might scale it, and then replevy for two years, but that he intended to accept commonwealth’s paper,atits nominal value in discharge of the note, for the land, if it should be punctually paid* He alleges, that Coleman never offered to pay him, even commonwealth’s paper, at its nominal value; and he proposes yet to take it, if he will tender it.
The circuit court, perpetuated the injunction for $> 120, with its interest, and dissolved it for the remainder of the judgment, with damages, and dismissed the bill.
From this decree, Coleman appealed, ahd his coun' sel'insists here, that the contract ought to.liave been rescinded, because M‘Kinney had ño potver to sell the land in Kentucky, nor to transfer the certificates for the land in Illinois; or that if the,contract should not be rescinded, the injunction ought to be perpetuated for $>240, instead of ‡ 120, apta for the difference on the balance due between páper and specie; and' that there ought to have been ño decree against Coleman for damages,
We can perceive no sufficient reason for the recision of the contract. No fraud in the sale, is either alleged or proved. And We have no doubt, that the sale by the executor, was valid and passed to Coleman all the right, which Fisher ever liad to the two hundred acres of land.
By the common law, if an authority, without an interest, be given to the executors, to sell land, a sale is not valid, unless they all unite in it; because the au- *249 íhority is delegated, and the trust confided to all, and to no less number than all. But if the land be devised to the executors to sell, those who shall qualify, may execute the power, because th'e power to sell is coupled with, and is incidental to the title, vested by the will, which is in sUch only as shall qualify.
But by the 44th section of the act of 1797, Í. Dig. b5l,itis enacted in substance, that such of the executors as shall qualify, may sell land, devised to be sold, if np other person be appointed, for that purpose.
This court has decided, in the case of Wooldridge’s heirs vs. Watkins’s executors, that a devise to executors to sell lands, as they may judge necessary, will not authorize one executor to sell.
This doctrine is undeniably correct in reason and principle. But it does not apply to this case. The reason fails here.
In the case, in III. Bibb, the sale is optional. It depends on discretion. The testator has chosen to confide that discretion to several. He relied upon, and intended to have the benefit of their united counsel. And, therefore, his vviil would be perverted, and .the security at which he aimed, Alight be frus^ trated, if one executor could elect to sell or not to sell.And therefore, it was supposed,(and no doubt correctly,) in the case in III. Bibb, that the statute did not apply, and that, therefore, the common law remained unchanged.
It is not a necessary or even an allowable inference from this authority, that the statute applies only to cases, in which there is a positive, unconditional direction to sell. The converse results from.the reason of the decision, and from the only reason, on which the opinion can he maintained. It is not because the sale is contingent, that the statute will not apply; but, it is only, because the contingency depends on the judgment of several persons, in whose discretion, the testatorhad confidence, and whom therefore, he selected, to decide whether a sale would be expedient He had not determined -whether a sale would be proper, and therefore, deferred the decision to others, *250 chosen by him, ’ for the purpose of deciding it. No others, therefore can have the right to controul the
But if he had directed a sale, on the occurrence of a particular- event, which was not to be controlled, and could not be produced, nor prevented by the wisdom or the acts of his executors, would the reason of the decision in III. Bibb, exist; and-would not the. statute apply 1 Suppose he had devised the land to a minor, and directed his executors to sell it, in the event of the minor’s death, before he attained twenty--one years of age.
'There is no discretion confided to the executors here. Nothing is made to depend on their judg-ments. If the minor shall die in minority, the devise is peremptory, and the executors-have no discretion, Here the testator had determined, that the land should s°ld an<^ not confided that determination to the judgment -or the will of others. It. is his-will that (he’land shall be sold, and not 'the wilt of his executors*
Tlie statute certainly was intended, and must be construed, to apply to such a case as this.
It follows, by analogy, that M'Kinney had the right 'to sell. The sale depended, not on his will or judgment, but on the contingency of the-insufficiency of the personal estate to pay the debts.
This fact is not controlable bj? his discretion; and it can be ascertained as well by him, as by all who were nominated as executors. If the assets be insufficient, the sale must be made whether the executor deem it expedient or not.
It is not shewn, that Fisher owned any otherland than the two hundred acres, which the executor sold. ■Therefore, the devise, to ‘■'■sell my land,” must give authority to sell this tract. Indeed, it would authorize a sale of all the testator’s land, if he had owned more than one tract. The authority given, -by the will, to “sell and conveyj” should not be construed,-as it has been, by Coleman’s counsel, to exclude the idea that the testator intended that the two hundred acres tract, should be sold. If it had been shewn, that the -testator had another tract, to which he held the *251 legal title, it might be urged, with some plausibility that the direction to “convey” restricted the authority to sell, to that identical tract.
But even then, without any other clue, we should be inclined to a different construction.
In this case, we have no doubt that the testator, intended, to authorize the sale.of the two hundred acres, and meant, by the expression “convey,” that the executor should transfer, to the purchaser all his right. It is not to be presumed; that the testator understood the precise technical import of the. word, “convey,” any more than a common man should be presumed to know the legal import of the word, “purchase.”' The “ popular” construction should generally be given to wills; and the intention of the testator, whenever it can be ascertained from the contest by this process, should prevail; for that is his will...
Whether there was a deficiency of assets or.not, cannot affect the sale to Coleman.
Wherefore, M’Kinney had authority to sell; and if he abused it, by selling when it was not necessary to sell, Coleman’s purchase cannot be invalidated. Besides, the necessity of the sale is not questioned.
As to the certificates for the land in Illinois, if will be admitted, that M’Kinney has not shewn'that he had authority to transfer them, nor that he did transfer them, conformably to the “law of the place.” ■ As to any title which could be transferred to the land which they described, the Hese., loci rei scitis’’’ must govern. v
But Coleman knew this as well as MfKinney did; He agreed to take the certificates and Kennedy’s bond, and stand in the attitude,'in which Eisher stood. M’Kinney did not promise to make any particular transfer of the certificates, or to guarantee any thing jn relation to them. Coleman has not alleged,, that he has heen unable to‘obtain the title to the land in Illinois, or that he ever made any effort lo. obtain it. He has not 'complained of a want of authority in M'Kinney, to vest him with all the equity of Fisher. The authority to sell the land in Kentucky, gave the incidental, power to do whatever *252 might.be necessary to effectuate the safe. A Irani--ferenceof Fisher’s right, to the certificates, was necessary for this purpose; and, therefore, the will gave all the power to make the transfer, which the testator could delegate, to his executor.
if’by the ‘Hex loci,” a transfer by the will is not permitted, Coleman has failed to allege the fact or to make it the foundation of any complaint; and if he had stated the fact to be so, and urged that, as an objection to the dissolution of his injunction, he would not have, thereby, shewn that he was entitled.to a recisicfn of the contract, because:
1st. It dbes not appear (hat he has been deceived by McKinney , or that M'Kinney undertook to do any things which he is unable to do, .and has not done.
2d. Coleman has enjoyed the possession of the land, which he purchased, and for aught that he has stated, might obtain the title to it, if he desire it, and would make the necessary efforts. If he had made Kennedy, and the heirs and devisees of Fisher, parties, he could have ascertained, whether ho could' get a title, and we have no reason to doubt, that he could procure it. But, before he can do so, he must pay the amount which is due for the Illinois !,and. This he undertook to do, but does not seem to have done, or attempted. He does not, therefore, appeal to the conscience of the chancellor, for a re cisión, with a very becoming grace. He has certainly not Shewn, that he is entitled to a tecision of the contract; and he should not keep the land and withhold the consideration. The circuit court might have given him leave to make the necessary parties forofe. taining a title, and have dismissed his bill, if he failed to make them in -a reasonable time. But this was not the duty of the court, as he had evinced no disposition, nor even alleged any offer, to pay íhe bal-anee due on the Illinois land, or the p.rice which ho had promised, for the two hundred acres in Kentucky, r.or alleged any thing, which could induce an apprehension, that, by paying the instalments, due in Illinois he could not obtain a title.
But there is a still stronger objection to a recision. M'Kinney 7iever promised to make him a title £ and he *253 knew when lie bought the land, in what condition title was, and what the authority and duty of M‘Kinney were. Unless, therefore, he had alleged and proved fraud iu the sale, he could not be entitled te rescisión for want of title;
But there is error in the decree. It is clearly proved that all who were at the sale, understood that it was for commonwealth’s paper;.and it is satisfactorily shewn, that this understanding was authorized by the declarations, of not only the crier, but of McKinney himself, And it is not to be doubted; that McKinney induced Coleman, to sign the note, by assuring him that, if promptly paid, commonwealth’s paper ■would be received in discharge of it.
This fact, however, could not be.legally established by parol evidence, without the allegation and proof of fraud, or mistake, in the execution of the note for dollars. Because, M’Kirtney does not admit that such was his Contract.
tiut there is no allegation in the bill, that the note wns procured for dollars, either through mistake or fraud. Such an allegation is indispensable. And proof without allegation, will be as ineffectual, as an allegation without proof. \
Besides it is probable from the proof, that M‘Kinney promised to accept paper only, in the event of a prompt tender of it; and there"is no allegation or proof of any offer to pay any thing, at any time. Oa the contrary, it is evident that Coleman soon became dissatisfied with his bargain, and was unwilling to comply with it.
But the $120 and interest, (the excess of the amount actually due, for the Illinois land, over $3G0, the sum represented to be d ue) entitled Coleman to a credit, when his note fell due, if not sooner. He proposed the credit, and M‘Kinney, had no right to refuse to allow it, for more than the actual amount in specie; because, when the credit was proposed, it was a virtual payment of so much of the note; and M‘Kinney admits that he was willing, at the time of the contract, to receive commonwealth’s paper, at its nominal amount, if it should be offered promptly.
*254 Here were then, upwards of $120, in specie, worth, double that amount in commonwealth’s paper, offered to him before the note became due. He was not bound to take specie, at its value in paper; but, as he admits, that he was willing to receive paper, at its nominal value and he had deceived Coleman, by his own innocent misrepresentation,.as to the amount due on the Illinois land, he was bound in conscience and? equity, to allow him a credit for the value,, in commonwealth’s paper,of the $120, and interest; which-would make the credit $240, with interest.
As to the balance, without appropriate allegations, there could" be no decree to reduce it to the specie value of paper. But, as it is perfectly clear, that M‘Kinney agreed to acceptcommonwealth’spaper; andashe has proposed to accept it in his answer, it would have been just to have given a day for the payment of it, and if M‘Kinney refused to take it, to have perpetuated the injunction; but if Coleman failed to pay it, to have dissolved it.
Without such an interlocutory proceeding, M‘Kinney might coerce the specie, after proposing in his answer, to accept commonwealth’s notes.
Wherefore, the decree of the circuit court is reversed, and the cause remanded, with instructions to render a decree conformable to this opinion.
The appellee must pay the appellant his cos$s in this court, to be levied “de bonis teslatoris.”